HOFFMAN ET AL. *v.* POUNDS ET AL., BOARD OF EDUCATION OF DELAWARE CITY SCHOOL DIST., ET AL.

(Decided June 9, 1930.)

*Messrs. Marriott & Marriott,* for plaintiffs.

*Mr. H. D. House* and *Messrs. Harris, Denman & Christian,* for defendants.

*Messrs. Knepper & Wilcox, amici curiæ.*

LLOYD, J.   On March 14, 1929, a high school building of the Delaware city school district of Delaware county, Ohio, known as the Delaware High School, was partially destroyed by fire, the extent of the loss, as measured by the adjustment made with the insurance companies, being $20,000. This amount, upon its receipt by the board of education, was placed in

the general fund, and later transferred therefrom to one called the building fund. On July 10, 1929, the board of education adopted a resolution declaring and determining it to be necessary "to construct or build a new fireproof school house in said district in lieu of repairing or rebuilding said school house so destroyed by fire," and for such purpose "to issue and sell bonds of said School District in the amount of $400,000.00, which bonds shall be issued without a vote of the electors as is provided by law, and especially Section 2293-15, of the General Code of Ohio, and are also issued pursuant to the provisions of Sections 2293-1 to 2293-37, General Code, inclusive, and Section 7625 and Section 5654-1 of the General Code of Ohio." The resolution further provided, as to the denomination of the bonds, how to be numbered, and when maturing, and that "to provide a fund sufficient to discharge said bonds at maturity there shall be and is hereby levied on all the taxable property of the Delaware City School District, in addition to all other taxes, a direct tax annually outside the 15 mill limitation, during the period said bonds are to run and in amount sufficient to provide funds to pay the interest upon said bonds as the same falls due and is payable, and also to provide a fund for the discharge of the principal of said serial bonds at maturity, which said tax shall not be less than the interest and sinking fund tax required by Section 11 of Article XII of the Constitution of Ohio." The resolution further declares that everything necessary to be done to validate and make legal the bonds so to be issued has been done, and that the tax to be levied for their payment does not exceed any limit of taxation of the district, nor

does the amount of the bond issue exceed any limitation of indebtedness as fixed by law. It provides how, on what terms the bonds shall be sold, and how signed, and that a copy of the resolution be certified to the county auditor for the purpose of levying and placing upon the tax duplicate the taxes necessary "to pay interest and sinking fund for the retirement of said bonds at maturity," and that the taxes so levied shall be collected in the same manner that other taxes are collected. Pursuant to this resolution the bonds so authorized, having been theretofore advertised, were offered for sale on August 14, 1929, the entire issue thereof being on that day sold to W. L. Slayton & Co., of Toledo, for par, plus a premium of $2,328. On August 20, 1929, upon payment of the amount bid therefor, the bonds were delivered to Slayton & Co., and, with two exceptions, the present holders thereof are not known.

Each of the bonds contains the following recitals:

"This Bond is one of a series of four hundred serial bonds of like tenor and effect, except as to maturity, numbered from one to four hundred, both inclusive, all of said bonds being in the denomination of One Thousand Dollars each, aggregating in amount the sum of Four Hundred Thousand Dollars, and issued for the purpose of providing a fund to construct or build a new fireproof schoolhouse in said District in lieu of repairing or rebuilding a schoolhouse partially destroyed by fire, under and by the authority of the general laws of the State of Ohio, particularly pursuant to and in full compliance with the 'Uniform Bond Act' of the General Code of Ohio, and pursuant to a resolution duly and

legally passed by the Board of Education of said School District on the tenth day of July, 1929.

"It is hereby certified and recited, that all acts, conditions and things necessary to be done precedent to and in the issuing of these bonds, in order to make them legal, valid and binding obligations of said Board of Education, have been done, have happened and been performed in regular and due form as required by law; that the faith, credit and revenue of said Board of Education are hereby irrevocably pledged for the prompt payment of the principal and interest thereof at maturity; that no limitation of indebtedness or taxation, either statutory or constitutional, has been exceeded in issuing these bonds and that due provision has been made for levying and collecting annually by taxation an amount sufficient to pay the interest on these bonds as it falls due and to provide a sinking fund for the final redemption of said bonds at maturity."

Of the $402,328 received from the sale of the bonds, $51,000 was expended by the board of education for a land site for the proposed new building, $200 for printing the bonds, and some further sums for other expenses incurred. The parties hereto agree that the total taxable value of all property in this school district at the time of the authorization and issuance of these bonds was $16,600,830. The court of common pleas held that the bonds were illegal and void and ordered that the balance remaining from the sale of the bonds and the proceeds of the sale of the purchased real estate be declared a trust fund for the benefit of the holders of the bonds, a trustee being appointed to hold and administer such fund.

On October 30, 1929, George K. Hoffman and others, as electors and taxpayers of this school district, filed a petition against the then members of the board of education of the district and the auditor and treasurer of Delaware county, alleging these bonds to have been illegally issued for a number of reasons therein set forth. A trial was had in the court of common pleas upon the issues made by the petition and the answers filed thereto, and, from the decree rendered therein in favor of the plaintiffs, an appeal has been taken to this court.

After the appeal was perfected the personnel of the board of education changed, two of the members being replaced by others. The board, as now constituted, is not appearing or claiming any relief in this court. On March 8, 1930, the plaintiffs filed in this court an amended and supplemental petition, in which, in addition to the members of the board of education and the auditor and treasurer, the Castalia Banking Company, the First National Bank of Delaware, and W. L. Slayton & Co., are named as defendants, and answers thereto have been filed by them.

The Castalia Banking Company is the owner and holder of three of these bonds, and the First National Bank of Delaware has twenty-five of them. In this amended and supplemental petition the plaintiffs claim that all of the bonds in question are illegal, first, because the board of education in its resolution made no effective and lawful provision for levying and collecting by taxation an amount sufficient to pay the interest on the bonds and to provide a sinking fund for final redemption at

maturity, and, second, because said issue of bonds would aggregate a net indebtedness of the school district in excess of the limitation placed thereon by Section 2293-15, General Code. In answer to these claims the defendants contend that the board was invested with power to issue these bonds and to authorize the necessary levy of taxes to pay the interest thereon and to provide for the payment thereof at maturity.

Section 2293-15, General Code, limiting the net indebtedness which may be created or incurred by any school district, provides that "In ascertaining the limits of this section * * * the following bonds shall not be considered: * * * (c). Bonds heretofore issued under the provisions of Section 7630-1 or hereafter issued for the purpose of rebuilding or repairing a school house wholly or partly destroyed by fire or other casualty, or for the purpose of building a new school house in lieu of repairing or rebuilding such school house destroyed by fire or other casualty; provided that any insurance moneys received as a result of any such destruction are first applied to reduce the amounts of bonds issued for such repair, rebuilding or new construction, but bonds excepted from the limitation of this section under the provision of this paragraph (c) shall never exceed three per cent. of the total value of all property in any such school district as listed and assessed for taxation."

It would seem that the duty imposed to apply any insurance money received is a condition incident to rather than a limitation of the power thereby granted, and, this being so, the school district had authority to issue bonds for the purpose specified

not in excess of 3 per cent. of $16,600,830, which would be a greater sum than $400,000, the aggregate amount of the bond issue here in question. The present holders of the bonds, being without knowledge of any dereliction of duty on the part of the board in the application of any insurance money received, had a right to rely upon and are protected by recitals in the bonds to the effect that whatever the board was required to do had been done. In our judgment, however, this proviso means what it says, "that any insurance moneys received * * * are" to be "first applied to reduce the amounts of bonds issued," and is not to be so construed as to read: "first applied to reduce the amounts of bonds to be issued." This condition is and should be construed to be a condition subsequent, because, if the issuance and sale of the bonds were dependent upon and must await the collection of insurance money, the very purpose of the power granted would be avoided. Dispute and litigation as to the loss and the amount of insurance, if any, which should be paid, might, in some cases at least, postpone indefinitely the power to obtain the funds necessary to construct a much-needed school building to replace one destroyed by fire. This leaves the inquiry as to whether the bonds are illegal and void because the tax levy authorized by the resolution was placed by the resolution outside of the 15-mill limitation provided by Section 5625-2, General Code.

Section 2293-2, General Code (112 Ohio Laws, 365), provides: "The taxing authority of any subdivision shall have power to issue the bonds of such subdivision for the purpose of acquiring or constructing, any permanent improvement which such

subdivision is authorized to acquire or construct. But no subdivision or other political taxing unit shall create or incur any indebtedness for current operating expenses, except as provided in Sections 2293-3, 2293-4, 2293-7 and 2293-24 of the General Code. The estimate of the life of permanent improvements proposed to be acquired, constructed, improved, extended or enlarged from the proceeds of any bonds shall be made in any case by the fiscal officer of the subdivision and certified by him to the bond-issuing authority and shall be binding upon such authority.''

Prior to the resolution authorizing the issuance of the bonds, the clerk of the board, as the fiscal officer of the school district, made to the board the certificate required by the foregoing section as to the proposed school building. It is not disputed that the proposed school building is a permanent improvement within the meaning of subdivision (e) of Section 2293-1, and Section 7625, General Code. Since the board of education had power to issue the bonds in question, it would seem that, even if there were no direct authorization, the power would exist by implication to provide a levy of taxes to pay the interest thereon as well as to establish the necessary fund to redeem them at maturity. But, by Section 2293-36, General Code, it is provided that, ''after the issue of any notes or bonds, the taxing authority shall annually include in its budget a sufficient amount to pay the interest on and to retire at maturity such bonds or notes; and shall levy a tax therefor.'' The bond issue in question, not being in excess of the limitations provided in Section 2293-15, General Code, and the board possessing the power to

authorize the issuance of the bonds, it would seem to follow as a corollary thereto that it was intended thereby expressly to provide, without restriction or limitation, for the levying of a tax sufficient to pay the interest thereon and to retire the bonds at maturity.

If this conclusion is correct, then the tax levy necessary to meet the obligation incurred by the issuance of the bonds, if necessity requires, is in addition to and independent of the "fifteen mill limitation" imposed by Section 5625-2, General Code, wherein is excepted "taxes specifically authorized to be levied in excess thereof," Section 5625-7, General Code, providing that there shall be exempt from the 15-mill limitation "tax levies excluded by law" therefrom. It would seem also that by virtue of subdivision (a) of Section 5625-6, General Code, a tax levy for the payment of these bonds and the interest thereon might lawfully be made within the 15-mill limitation.

If the construction thus given to these statutes is correct, then no constitutional inhibition has been violated, and the bonds, which on their face by the recitals contained therein purport to have been issued according to law, and which have been sold, delivered, and paid for, and are now held by the purchasers thereof, are incontestable by virtue of Section 2293-37, General Code. All of the sections of the General Code to which we have referred became effective on the same date, and it must be that the legislature intended that all of them should be harmoniously and consistently construed. These bonds were sold pursuant to public advertisement and with the plaintiffs' knowledge. There was noth-

ing secretive about their authorization or their sale. The school district has received the proceeds of the sale, and this suit was not brought until some time thereafter. To hold these bonds illegal and void would not only be unconscionable, but, as we believe, would require a strained construction of the several statutes pursuant to which they were issued and sold.

A decree may therefore be entered for the defendants in accordance with this opinion.

*Decree for defendants.*

LEMERT and SHERICK, JJ., concur.

LLOYD, J., of the Sixth Appellate District, sitting by designation in place of HOUCK, J., of the Fifth Appellate District.